DECISION
Before this Court are multiple motions for summary judgment relative to a complaint for declaratory judgment. On February 20, 2003, a fire occurred at the Station nightclub, located at 211 Cowesett Avenue, West Warwick, Rhode Island ("Station Property"), resulting in a number of deaths and personal injuries. Thereafter, the owner of the Station Property, Triton Realty Limited Partnership ("Triton Limited"), contacted three insurance carriers to put them each on notice of potential liability claims. Triton Limited was later named as a defendant in a suit filed in the United States District Court for the District of Rhode Island, relative to personal injuries sustained in the fire. Subsequently, Triton Limited, on behalf of itself and its general partner, Triton Realty, Inc. ("Triton Realty"), contacted the three insurance providers — Merchants Insurance Company of New Hampshire, Inc. ("Merchants"), National Fire Insurance Company of Hartford ("National Fire"), and Essex Mutual Insurance Co. ("Essex") — requesting liability coverage. Because none of the insurers provided Triton Limited with the degree of coverage it felt it was owed under the various policies, Triton Limited filed the instant complaint for a declaratory judgment pursuant to G.L. 1956 § 9-30-1 ordering each of the insurance companies to provide such coverage to Triton Limited and Triton Realty. Subsequently, both National Fire and Merchants filed the instant motions for summary judgment pursuant to Super. R. Civ. P. Rule 56.
 FACTS AND TRAVEL
Triton Limited is a limited partnership organized under Massachusetts law. (Compl. for Decl. J. ¶ 1.) At all times relevant hereto, Triton Realty, a Rhode Island corporation, has been the general partner of Triton Limited. Id. at ¶ 2; seealso Dec. 18, 1997 Agreement of Ltd. P'ship ("LPA"). Triton Limited is the owner of the Station Property. (Compl. for Decl. J. ¶¶ 13, 16.) Prior to the fire, Triton Limited entered into a commercial lease agreement ("Lease Agreement") with Michael Derderian, Jeffrey Derderian, and Derco, L.L.C. (collectively "Derco") relative to that property. (Compl. for Decl. J. ¶ 15.) Pertinent to the instant motions, the Lease Agreement contained numerous provisions pertaining to indemnification between Triton Limited and Derco for potential liability to third parties.[1] (Lease Agreement ¶¶ 16.3, 16.4; see infra
for further discussion.)
After the fire, because of media reports indicating that several individuals would likely pursue damages from a variety of defendants, Triton Limited — being one of those potential defendants — placed three commercial liability insurers on notice that claims may be forthcoming. It contacted National Fire, with whom Triton Limited had procured a commercial liability policy that was effective through the relevant time period. Next, Triton Limited notified Merchants in relation to a commercial liability policy that was also effective on February 20, 2003. Importantly, however, it is yet to be established in these proceedings that Triton Limited was, in fact, insured under the Merchants policy.[2] Finally, Essex was placed on notice of the impending claims relative to a commercial liability policy it had previously issued to Derco. As with the Merchants' policy, there exist questions of fact as to whether Triton Limited or Triton Realty is insured by Essex.[3]
Subsequently, both Triton Limited and Triton Realty were named as defendants in a personal injury action filed in the United States District Court for the District of Rhode Island.[4]
According to Triton Limited and Triton Realty, each of the aforementioned insurance providers has refused to provide liability coverage to the extent owed under the respective insurance contracts. (Compl. for Decl. J. ¶ 29.) Consequently, Triton Limited and Triton Realty filed the underlying complaint for declaratory judgment pursuant to § 9-30-1 etseq.[5] in which they seek a declaration that each of the insurers — National Fire, Merchants, and Essex — "has a duty to provide liability coverage to Triton Limited and Triton [Realty]." Id. at ¶¶ 31-33.
Thereafter, National Fire filed the instant motion for summary judgment.[6] National Fire proffers that Merchants is required to contribute to the defense of Triton Limited and Triton Realty, as well as to reimburse National Fire for costs already incurred in providing such defense. Merchants opposes the proposition that it is required to contribute to any defense costs in this matter and has also submitted its own motion for summary judgment against both National Fire and Essex. In that motion, Merchants alleges that it owes no duty to contribute under any conceivable interpretation of the controlling insurance policies. Essex objects to the motions of both Triton Limited and Merchants. In addition, Essex avers that, in light of Derco's recent filing in the United States Bankruptcy Court for the District of Rhode Island, all proceedings herein are subject to the resulting automatic stay.
 SUMMARY JUDGMENT STANDARD
The Superior Court Rules of Civil Procedure provide, in relevant part, that any "party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move, with or without supporting affidavits for summary judgment in the party's favor." Super. R. Civ. P. Rule 56(b). Thereafter, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. at Rule 56(c).
When considering a motion for summary judgment, "the [C]ourt does not pass upon the weight or the credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano v.Burrillville Racing Ass'n, 603 A.2d 317, 320 (R.I. 1992) (citation omitted). The Court's purpose during the summary judgment procedure is issue finding, not issue determination.Weaver v. Am. Power Conversion Corp., 863 A.2d 193, 200 (R.I. 2004) (citation omitted). In defending such a motion, "the opposing parties will not be allowed to rely upon mere allegations or denials in their pleadings. Rather, by affidavits or otherwise they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact."Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998) (citations omitted).
 BANKRUPTCY AND THE AUTOMATIC STAY
Essex contends that an automatic stay prohibits altogether the relief sought in Triton's complaint for declaratory judgment. Because of the threshold nature of this issue, the Court will address it at this early juncture. As discussed above, it is undisputed that Derco is a named insured on the liability policy issued by Essex. In October 2005, Derco filed for bankruptcy in the United States Bankruptcy Court for the District of Rhode Island. Consequently, all proceedings against Derco and its bankruptcy estate were automatically stayed at that time.[7] The automatic stay provision of the Bankruptcy Code "provides in substance that filing a bankruptcy petition activates an automatic stay [t]hat applies, inter alia, to the commencement or continuation of most judicial actions or proceedings against the debtor to obtain possession of property of the estate." Sunshine Dev., Inc. v. FDIC, 33 F.3d 106, 113
(1st Cir. 1994).
Referencing the legal conclusion that a general liability insurance policy and its proceeds are considered property of the bankrupt policyholder's estate, Essex claims the instant declaratory judgment action must be stayed because any declaration from this Court regarding Essex's duty to defend will necessarily affect the insurance proceeds that are available to the debtor. Both National Fire and Merchants dispute Essex's argument that the Bankruptcy Code mandates a stay of the instant complaint. Specifically, National Fire disputes Essex's contention that the insurance proceeds are a part of the bankrupt's estate. Furthermore, National Fire suggests a declaration as to Essex's duty to defend is separate from Essex's duty to indemnify and, therefore, has no bearing on the policy limits that Essex claims are a part of the bankruptcy estate. Finally, Merchants notes that the automatic stay only applies to proceedings against non-debtors in very limited circumstances, such as when the non-debtor and debtor are so closely intertwined that a claim against one is essentially a claim against the other and that this is not such a case. In addition, Merchants points out that the automatic stay is a legal mechanism through which only debtors, such as Derco, can ask the bankruptcy court for protection against creditors.
The First Circuit Court of Appeals has determined that proceeds from a liability policy directly available to a debtor are property of the bankruptcy estate and subject to the automatic stay.[8] Nonetheless, Essex's argument is unavailing with respect to the instant dispute.
It is well-established that the automatic stay protection applies only to actions against the debtor and is only extended to non-debtors in "unusual circumstances," such as "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." A.H. Robins Co. v.Piccinin, 788 F.2d 994, 999 (4th Cir. 1986). For example, such would be the case where the defendant, if found liable, would be entitled to complete indemnification from the debtor.Id. The instant complaint for declaratory judgment is a proceeding against three insurers, none of which has declared for bankruptcy as of the date of this Decision. Rather, Derco is the entity that has declared for bankruptcy. Therefore, it is Derco — and Derco only — that may reap the benefits of the automatic stay provision.[9] Refusal to apply the statutory stay in this case to declare the rights and obligations relative to the insurers' duty to defend does not defeat the purpose and intent of the statute. See, e.g., In re Jamo, 283 F.3d 392, 398
(1st Cir. 2002) (purpose of automatic stay is to give the debtor "breathing room" by suspending all collection efforts).
Furthermore, a thorough review of the language in the Essex policy reveals that the ultimate resolution sought in the instant complaint — a declaration that Essex, as well as Merchants and National Fire, is obligated to defend Triton Limited and Triton Realty — would not affect the liability coverage available to Derco, and therefore, would not erode the bankrupt's estate. Essex's policy provides that it will pay all reasonable expenses pertaining to its duty to defend the insured and that "[t]hese payments will not reduce the limits of insurance." Accordingly, any declaration herein in relation to Essex's duty to defend will not affect Derco's bankruptcy estate, and, as a result, the automatic stay does not apply to this proceeding. SeeO'Donnell v. Twin City Fire Ins. Co., 40 F. Supp. 2d 68, 71
(D.R.I. 1999) (citations omitted) ("[t]he duty to defend is broader than the duty to indemnify" and therefore, the insurer "may have a duty to defend plaintiffs even though it may eventually not have a duty to indemnify plaintiffs").
 WHETHER MERCHANTS HAS A DUTY TO DEFEND
Because the automatic stay does not preclude the resolution of the underlying complaint for declaratory judgment, this Court will address the substance of the instant motions for summary judgment. For the reasons set forth below, the motions for summary judgment of National Fire and Merchants are each denied. Questions of material fact remain and require a full evidentiary hearing before this Court.
National Fire moves this Court to declare at this summary stage that Merchants is required to contribute to the defense of Triton Limited and Triton Realty with respect to the complaint filed in the United States District Court for the District of Rhode Island, alleging personal injuries resulting from the February 20, 2003 fire at the Station nightclub, including reimbursement for past defense costs already incurred by National Fire. To this end, National Fire claims that Merchants' obligation runs unless and until a determination is made that Merchants' policy does not provide coverage for the underlying lawsuit.[10] Merchants rejects the notion that it is obligated to contribute to the defense of either Triton Limited or Triton Realty or that it need reimburse National Fire for past expenses.
To determine whether a duty to defend extends to a particular insured, this jurisdiction applies a "pleadings test" that "requires the trial court to look at the allegations contained in the complaint and `if the pleadings recite facts bringing the injury complained of within the coverage of the insurance policy, the insurer must defend irrespective of the insured's ultimate liability to the plaintiff.'" Progressive Cas. Ins. Co. v.Narragansett Auto Sales, 764 A.2d 722, 724 (R.I. 2001) (quotingPeerless Ins. Co. v. Viegas, 667 A.2d 785, 787 (R.I. 1995)) (citations omitted). Accordingly, Rhode Island law requires that an insurer provide a defense if the pleadings contain allegations that, if true, would establish coverage under the policy.
Here, the underlying complaint alleges that Triton Limited and Triton Realty negligently failed to keep the premises at 211 Cowesett Avenue in a reasonably safe condition and that this negligence resulted in the death and personal injury. The policy issued by Merchants provided liability coverage for bodily injury caused by an occurrence taking place within the coverage territory and during the policy period. It has already been determined that there exists "a genuine issue of material fact as to the identity of the insured party." Triton Realty Ltd. P'shipv. Essex Mutual Ins. Co., C.A. No. PC03-0319, July 21, 2004, Gibney, J. It follows that there also exists a genuine issue of material fact as to whether the "injury complained of [was] within the coverage of the insurance policy." Progressive Cas.Ins. Co., 764 A.2d at 724. Therefore, National Fire's motion for summary judgment against Merchants, requesting a declaration that Merchants is obligated to contribute to the defense of Triton Limited and Triton Realty, is denied. See Bourg,705 A.2d at 971 (to defeat a summary judgment motion, the nonmoving party has an affirmative duty to show a genuine issue of material fact). This Court is cognizant that such a duty may well exist, but because questions of material fact exist as to the identity of the insured listed on Merchants' policy, that determination must be made at a full evidentiary hearing.
National Fire also argues that it is entitled as a matter of law to reimbursement from Merchants for costs already incurred in defending Triton Limited and Triton Realty. As noted above, however, a question of fact exists as to which entity Merchants insured. Accordingly, Merchants' duty to defend in this case needs to be resolved before this Court can address Merchants' particular financial obligations, if any. See Gliottone v.Ethier, 870 A.2d 1022, 1027 (R.I. 2005) (citation omitted) ("[w]hen a genuine issue of fact exists, the trial justice must not decide the issue"). Moreover, the briefs submitted by National Fire and Essex reveal that genuine issues of material fact exist pertaining specifically to the question of whether Merchants will owe past defense costs to National Fire.[11]
Therefore, National Fire's motion for summary judgment, as it pertains to reimbursement for past defense costs, is denied.
 THE OBLIGATIONS OF NATIONAL FIRE AND ESSEX
Merchants filed with this Court a motion for summary judgment against both National Fire and Essex alleging that, whatever determination is ultimately made as to the identity of the insured on its policy, Merchants has no duty to defend in this instance. Accordingly, Merchants claims it is entitled to summary judgment on the underlying complaint for declaratory judgment.
In the event it is determined that Merchants' liability policy covers Triton Realty, Merchants avers that the so-called "indemnity exception" dictates that National Fire will be obligated to provide a defense.[12] Merchants refers to the following provision of the LPA relative to the limited partner's indemnification obligations toward the general partner:
 "The General Partner shall be entitled to indemnity from the Partnership for any liability arising out of any act performed by him within the scope conferred upon him by this Agreement, providing the General Partner acted in good faith and in a matter he reasonably believed to be in, or not opposed to, the best interest of the Partnership and its Partners, except that no indemnification shall be made in respect to any claim, issue or matter as to which the General Partner shall have been finally adjudged by a court of competent jurisdiction to be liable for gross negligence or misconduct in the performance of his duty to the Partnership unless and only to the extent that the court in which such action or suit was brought shall determine upon application that despite the adjudication of inability but in view of all circumstances of the case, the General Partner was fairly and reasonably entitled to indemnity for such expense which such court shall deem proper, provided, that any indemnity under this Section 6.5 shall be provided out of and to the extent of Partnership assets only, and no Limited Partner shall have any personal liability on account thereof." (LPA § 6.5, ¶ A.)
Therefore, according to Merchants, because Triton Limited has agreed to indemnify Triton Realty "for any liability arising out of any act performed by him within the scope conferred upon him by this Agreement," the "indemnity exception" shifts the obligation to provide a defense to the insurer for the indemnitor, i.e., National Fire.
Merchants' argument continues that should this Court declare Triton Limited as the entity that was, in fact, insured under the Merchants liability policy, then such a determination would also necessitate a finding that Merchants owes no duty to defend in this case. That is so, according to Merchants, because, in the event that all three insurers provided coverage for Triton Limited, standard insurance law dictates that the "other insurance" provisions within the policies would control the rights and obligations of the parties. Such an inquiry reveals that the policies of both Merchants and National Fire contain "excess other insurance" clauses while Essex's policy has a "pro rata other insurance" provision. Accordingly, Merchants — citing case law from a number of jurisdictions — avers that Essex would then be responsible for the defense of Triton Limited.[13]
Merchants makes an alternative argument that, should this Court conclude that Merchants' policy covers Triton Limited, Essex is nonetheless obligated to provide the defense because of the aforementioned "indemnity exception." Merchants references the Lease Agreement between Derco and Triton Limited, which — as noted supra — contains a provision calling for Derco to keep Triton Limited harmless and indemnified for any loss arising out of Derco's use of the premises. Merchants claims that such a provision controls the rights and liabilities of the parties as well as their insurers.[14] Accordingly, Merchants maintains, under either of the aforesaid arguments, it is Essex that holds the duty to defend should this Court determine that Merchants insures Triton Limited.
None of Merchants' claims, however, eradicate the hurdle between the present state of the instant controversy and the ability of this Court to issue a judgment at this summary stage. As discussed above, there remains a genuine issue of material fact as to whether Merchants insured Triton Limited or Triton Realty. Additionally, whether Essex insured either of those entities is also a question of material fact as yet unresolved.[15] Accordingly, summary judgment is not proper at this juncture. Palmisciano, 603 A.2d at 320 (the moving party "must establish that [it] is entitled to judgment as a matter of law and that there are no issues of fact for a jury or other trier of fact to determine or resolve"). Rather, a full evidentiary hearing is necessary to determine the rights and obligations between Triton Limited, Triton Realty, and the three insurers. See Wright, Miller Kane, Federal Practice andProcedure: Civil 3d § 2731 (when reviewing a motion for summary judgment in an action for equitable relief, "[i]f relief seems inappropriate, or the judge desires a fuller development of the circumstances of the case, the judge is free to refuse to grant the motion"); Robert B. Kent et al., Rhode Island Civil andAppellate Procedure § 57:1 (2006) ("actions for declaratory relief pursuant to G.L. 1956 §§ 9-30-1 et seq. are to be conducted as other civil actions under the rules")
 CONCLUSION
The motions for summary judgment of both National Fire and Merchants are hereby denied. There exist genuine issues of material fact as to the identity of the insureds under the insurance policies in question. As such, a full evidentiary hearing before this Court is necessary to resolve the issue of the existence of insurance coverage before any declaration can be made as to the priority of coverage. Specifically, such hearing will resolve which entity or entities are insured under the policies issued by Merchants and Essex. Counsel shall submit an appropriate order for entry.
[1] With respect to the indemnification obligations running from Derco to the Triton Limited, the Lease Agreement provides that
 "the Lessee shall protect, indemnify and save harmless the Lessor from and against any and all liability to third parties incurred by any act or neglect of the Lessee, or any of its agents, servants or employees, in, on or about the demised premises. . . .
 Lessee shall and will hold and keep Lessor at all times harmless and indemnified on account of any loss, cost, damage or liability arising out of Lessee's use of the demised premises or out of Lessee's tenancy hereunder, which shall not be covered, provided for or compensated by such liability or other insurance, and also on account of any and all loss, cost, liability or damage to property resulting from any failure of Lessee, or of any person claiming under it or contracting with it, to keep the demised premises or any of the appurtenances or parts thereof or the sidewalks and ways adjacent thereto in good and safe condition and repair, or resulting from any negligence of Lessee, its servants or agents." (Lease Agreement ¶¶ 16.3, 16.4.)
Similarly, relative to Triton Limited's duty to indemnify its tenant, the Lease Agreement instructs that "Lessor agrees to indemnify and hold Lessee harmless from all expenses, losses, claims, suits, actions, damages and liability (including costs and expenses of defending against all of the aforesaid) arising from any negligent act or omission of Lessor or its agents, servants, employees, assigns, contractors." (Lease Agreement ¶ 23.8.)
[2] The particular issue of determining the identity of the insured on Merchants' policy was the subject of a motion to dismiss previously filed by Merchants and addressed by the Court. The policy is issued to "Triton Realty Limited Inc.," a non-existent business entity. See Merchants' BusinessElite Businessowners Policy p. 1; see also Triton Realty Ltd.P'ship v. Essex Mutual Ins. Co., C.A. No. PC03-0319, July 21, 2004, Gibney, J. After being served with the complaint for declaratory judgment, Merchants filed a motion to dismiss on the ground that "the activities of an un-named partnership . . . are excluded from coverage under the [policy]." In its motion, Merchants claimed that it had intended to insure Triton Realty and not Triton Limited. This distinction, according to Merchants, was crucial because the company's intent was to insure a business entity entirely different from the entity now claiming coverage. The Court stayed the motion pending the completion of discovery, concluding that "the name recorded on the policy . . . is reasonably susceptible to different interpretations, as this name resembles the names of both Triton, Inc. and Triton [Limited] Partnership, containing portions of each entity's designation."Id. at *7, *8. As such, the Court concluded that the identity of Merchants' insured is a residual question of material fact in this matter; a question that — as of the filing of the instant motions for summary judgment — has not been resolved. Id. at *8.
[3] While Essex's policy lists Derco as the insured, Triton Limited, in its complaint for declaratory judgment, contends that Derco had made a request to Essex that Triton Limited and Triton Realty be added as named insureds on that policy. (Compl. for Decl. J. ¶¶ 23, 24.) Consequently, Triton Limited claims that it and its general partner are both covered by that policy for any claims stemming from the February 20, 2003 fire. Id. at ¶ 25. In its briefs and at oral hearing, Essex has made it clear to this Court that it disputes the notion that either Triton Limited or Triton Realty is covered by the policy. Rather, Essex contends that such a determination remains an issue of fact that may or may not be resolved through ongoing discovery.
[4] See Third Am. Master Compl. ¶¶ 304-19, Gray v.Derderian, C.A. No. 04-312-L (D.R.I. filed Feb. 15, 2006). Each of the claims against Triton Limited and Triton Realty was founded in negligence. Specifically, the complaint alleges that the negligence of both Triton Limited and Triton Realty caused "deaths of and severe personal injuries to plaintiffs." Id.
[5] Section 9-30-1 provides, in relevant part, "[t]he superior or family court upon petition, following such procedure as the court by general or special rules may prescribe, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."
[6] Though the supporting memorandum submitted to this Court by National Fire — entitled Memorandum of Law of Third-Party Defendant National Fire Insurance Company of Hartford in Support of its Motion for Judgment as a Matter of Law — terms the within motion a "motion for judgment as a matter of law," the motion is made pursuant to Super. R. Civ. P. Rule 56. Moreover, the Rules mandate that a motion for judgment as a matter of law may only be made "during a trial by jury [after] a party has been fully heard on an issue." Super. R. Civ. P. 50(a)(1). Accordingly, this Court will treat the instant motion as one for summary judgment.
[7] Section 362 of Title 11 of the United States Code provides that the filing of a petition for bankruptcy operates as a "stay" against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a).
[8] See 11 U.S.C. § 541(a)(1) (defining "property" of the bankruptcy estate as "all legal or equitable interests of the debtor in property as of the commencement of the case");Tringali v. Hathaway Machinery Co., Inc., 796 F.2d 553, 560
(1st Cir. 1986) (concluding that the scope of property in the estate is broad, including all tangible and intangible property). The Tringali Court emphasized that "[e]very court that has recently considered the specific question has held that liability insurance falls within the scope of § 541(a)(1)."; see also 3 Lawrence King, Collier on Bankruptcy, § 362.03[5][b] (noting that the "prevailing view is that an insurance policy is property of the estate, protected by the automatic stay").
[9] See id. ("[t]he purpose of this section . . . is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts . . . and to provide the debtor . . . with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization").
[10] National Fire alludes to Merchants' previous motion in this case to dismiss the complaint for declaratory judgment against it on the ground that Merchants' policy does not cover Triton Limited. As discussed above, that motion was stayed by the Court because questions of material fact remained as to whether Merchants' policy insured Triton Limited, Triton Realty, or both. National Fire now suggests that the Court's earlier ruling in this regard necessarily means that Merchants' duty to defend persists.
[11] For example, the parties disagree as to the extent that Merchants requested coverage information from National Fire and as to whether Merchants affirmatively agreed to contribute to the defense of Triton Limited and Triton Realty.
[12] Merchants notes that "an indemnity agreement between the insureds or a contract with an indemnification clause . . . may shift an entire loss to a particular insurer notwithstanding the existence of an `other insurance' clause in its policy." Am.Indem. Lloyds v. Travelers Prop. Cas. Ins. Co., 335 F.3d 429,436 (5th Cir. 2003) (citing 15 Couch on Insurance (3rd Ed. 1999; Russ Segalla) § 219.1 at 219-7).
[13] See, e.g., Med. Protective Co. v. Nat'l Union FireIns. Co. of Pittsburgh, 25 Fed. Appx. 145, 147 (4th Cir. 2002) (where an excess provision and a pro rata provision apply to the same loss, the policy with the pro rata provision typically provides primary coverage).
[14] See supra note 10 and accompanying text.
[15] See supra note 3 and accompanying text.