# United States Court of Appeals
## For the First Circuit

No. 08-1008

NARRAGANSETT JEWELRY CO., INC., d/b/a C&J JEWELRY, CO., INC.

Plaintiff, Appellant,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Torruella, Baldock,[*] and Howard,

Circuit Judges.

James J. McGair, with whom Thomas C. Angelone and Hodosh, Spinella & Angelone, P.C. were on brief, for appellant.
Paul S. Callaghan, with whom James A. Ruggieri and Higgins, Cavanagh & Cooney, LLP were on brief, for appellee.

February 6, 2009

---

[*]Of the Tenth Circuit, sitting by designation.

**HOWARD, Circuit Judge**. This appeal arises out of an insurance coverage dispute between appellant Narragansett Jewelry Co. Inc., d/b/a C & J Jewelry Co. Inc. ("Narragansett") and its general liability insurer, appellee St. Paul Fire and Marine Insurance Co. ("St. Paul"). Narragansett sought defense and indemnity from St. Paul in connection with a civil action filed against it by Slane & Slane Designs, LLC ("Slane") in the Southern District of New York ("the underlying action" or "the Slane lawsuit"). Following St. Paul's denial of coverage, Narragansett filed suit in Rhode Island federal district court for breach of the insurance contract and for a declaratory judgment that St. Paul was required to provide coverage. Narragansett sought to recover money it expended in the Slane lawsuit, including attorneys fees and the amount it paid in settlement.[1] The district court granted St. Paul's motion for summary judgment, from which Narragansett appeals. Finding no error in the district court's analysis or conclusion, we affirm.

## I.

Under Rhode Island law -- which both parties agree governs this case -- an insurer's duty to provide a defense to litigation brought against its insured is determined by comparing the allegations in the underlying complaint against the insured to

---

[1]The Slane lawsuit was settled while the instant matter was pending in the district court.

the language of the relevant insurance policy.  This is referred to as "the pleadings test." Progressive Cas. Ins. Co. v. Narragansett Auto Sales, 764 A.2d 722, 724 (R.I. 2001).  "'[I]f the pleadings recite facts bringing the injury complained of within the coverage of the insurance policy, the insurer must defend irrespective of the insured's ultimate liability . . . .'" Id. (quoting Peerless Ins. Co. v. Viegas, 667 A.2d 785, 787 (R.I. 1995)).

## II.

We begin our analysis by figuratively "laying the  . . . complaint alongside the policy . . . ." Employers' Fire Ins. Co. v. Beals, 240 A.2d 397, 402 (R.I. 1968).  We start with the complaint.[2]  Slane is a jewelry design company that contracted with Narragansett in 1996.  Pursuant to the parties' agreement, Narragansett was to develop jewelry models and molds based on Slane designs, and to produce jewelry ordered by Slane.  Once Slane designed a particular piece of jewelry, it was Narragansett's job to produce a model to serve as a template from which the jewelry could be mass produced.  Upon Slane's approval of the model, a mold would be created for use in the mass production process.

The gist of Slane's complaint was that Narragansett "failed and refused to develop models of consistent and usable quality and which were free of defects." More specifically, Slane

---

[2]Slane followed its original complaint with an amended complaint. We refer to the latter unless otherwise indicated.

charged that Narragansett's models were not properly calibrated, or were defective in other ways that prevented them from being used to manufacture the final products. Slane also claimed that Narragansett damaged and lost numerous models belonging to Slane. Finally, Slane asserted that Narragansett either failed to deliver the final product, or delivered goods long after the expected delivery date.

Slane's original complaint, filed in May 2002, set forth causes of action for breach of contract, breach of express and implied warranties, negligence, negligent misrepresentation, and breach of the covenant of good faith and fair dealing. After St. Paul denied coverage, Slane filed an amended complaint in March 2003 adding a count entitled "Entrustment-Negligence," alleging that Narragansett damaged jewelry models which Slane entrusted to Narragansett for use in the production of jewelry. St. Paul again denied coverage, and Narragansett's declaratory judgment action followed.

In relevant part, the Comprehensive General Liability policy St. Paul issued to Narragansett provides that St. Paul will "pay amounts [Narragansett] is legally required to pay as damages for covered . . . property damage that happens while this agreement is in effect and is caused by an event." The policy defines "property damage" as "physical damage to tangible property of others, including all resulting loss of use of that property" or

-4-

"loss of use of tangible property of others that isn't physically damaged."  The St. Paul policy also contains several exclusions, describing matters that are not covered by the policy.  One of these, the Control of Property exclusion, provides that the policy does not "cover property damage to . . . [p]ersonal property that's in the care, custody, or control of [Narragansett]."

## III.

The district court granted St. Paul's motion for summary judgment on the basis of the Control of Property exclusion, concluding that the factual allegations in the "Entrustment-Negligence" count[3] ineluctably describe a loss related to Slane's property -- molds and models -- in Narragansett's "care, custody or control."  We review the district court's summary judgment ruling de novo, construing the record evidence in the light most favorable to Narragansett.  Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 855 (1st Cir. 2008).  "Summary judgment is appropriate 'where there is no genuine issue as to any material fact . . . and the movant is entitled to judgment as a matter of law.'"  New Fed. Mortgage Corp. v. Nat'l Union Fire Ins. Co., 543 F.3d 7, 11 (1st Cir. 2008)(quoting Fed. R. Civ. P. 56(c)).

In determining whether the allegations in a complaint are sufficient to create a duty to defend, we apply general rules of

---

[3]Narragansett conceded during the proceedings below that only the "Entrustment-Negligence" count in the amended complaint could be construed to afford it coverage.

contract construction and give words their "plain, ordinary meaning." Allstate Ins. Co. v. Russo, 641 A.2d 1304, 1306-07 (R.I. 1994). Any doubts about the sufficiency of the allegations are resolved in favor of the insured. Id.

St. Paul argues that the explicit language of the complaint compels a conclusion that the Control of Property exclusion applies to deny coverage. Specifically, St. Paul points out that the "Entrustment-Negligence" claim alleges that "Slane & Slane owned certain models which it entrusted to [Narragansett] for use in the production of jewelry," and that Narragansett "caused physical damage to such models . . . ." Narragansett responds by hypothesizing that the alleged loss and/or damage possibly occurred during the shipment process when placed in the hands of a third-party carrier, and thus not in Narragansett's care, custody or control. We agree with the district court that Narragansett's argument misses the mark.

Regardless of what might be "possible," there are no allegations in the Slane lawsuit that support Narragansett's hypothesis. Indeed, the exact opposite is true. The complaint specifically and repeatedly alleges that Narragansett caused the damage at issue. Narragansett relies on Shelby Ins. Co. v. Ne. Structures, Inc., 767 A.2d 75 (R.I. 2001), a building-collapse case in which the Rhode Island Supreme Court stated that the "possibility" of coverage was sufficient to bring the complaint

-6-

within the scope of the relevant policy.  <u>Shelby</u>, however, is readily distinguishable.  There, while the underlying complaint charged faulty workmanship, which would be excluded from coverage, <u>id.</u> at 77, the defendant/insured's underlying answer directly raised the substantive defense that the collapse was caused by an "Act of God," such as high winds, which might be covered.  <u>Id.</u> Here, the pleadings in the underlying case contain no similar claim that the alleged damage was caused by third party.  Narragansett's post-hoc speculation about third parties not referenced in the underlying lawsuit cannot suffice to avoid the plain language of both the complaint and the policy.[4]

The decision of the district court is **Affirmed.**

---

[4]Because we affirm on the basis of the Control of Property Exclusion, we do not address the other exclusions discussed by both sides.